UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HESAMALDIN BALALI AND LAYLA BALALI, <br>     *Plaintiffs*, <br><br> v. <br><br> U.S. EMBASSY YEREVAN, U.S. DEPARTMENT OF STATE, MARCO RUBIO, AND PAMELA BONDI, <br>     *Defendants*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 3:25-CV-00144 (SVN) <br><br><br><br><br> January 30, 2026 |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT AND PETITION FOR WRIT OF MANDAMUS

Sarala V. Nagala, United States District Judge.

In this immigration-related action, Plaintiffs Layla and Hesamaldin Balali, a married couple, seek declaratory relief and a writ of mandamus in relation to an allegedly unreasonable delay in the processing of Mr. Balali's application for an immigrant visa. Specifically, Plaintiffs seek a declaration that, by virtue of the delay, Defendants—the U.S. Department of State, the U.S. Embassy in Yerevan, Armenia ("the Embassy"), U.S. Secretary of State Marco Rubio, and U.S. Attorney General Pamela Bondi—violated the Administrative Procedure Act ("APA"), the United States Constitution, and the Immigration and Nationality Act ("INA"). *See* Compl., ECF No. 1. Plaintiffs also request that this Court issue a writ of mandamus compelling the Embassy to "adjudicate" Mr. Balali's visa application "within a reasonable time." *See id.* at 5.

Defendants have moved to dismiss Plaintiffs' action, claiming this Court lacks subject matter jurisdiction and, in any event, that Plaintiffs have failed to state a claim upon which relief can be granted. *See* Defs.' Mot. to Dismiss, ECF No. 17. Plaintiffs oppose the motion. *See* Pls.' Opp. Br., ECF No. 18. For the reasons described below, the Court GRANTS Defendants' motion to dismiss.

I.  **LEGAL AND FACTUAL BACKGROUND**

   A.  <u>The I-130 Immigrant Visa</u>

A non-citizen who is the immediate relative of a U.S. citizen or lawful permanent resident ("LPR") may obtain an immigrant visa (and eventually LPR status) through a family-based petition. The U.S. citizen or LPR begins this process by filing a United States Citizenship and Immigration Services ("USCIS") Form I-130, Petition for Alien Relative, on behalf of their family member. 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A). USCIS considers the petition, and any evidence presented alongside it, to determine whether the non-citizen beneficiary has a qualifying relationship (for example, a spousal relationship) with the petitioner. *Id.* § 1154(b). If the petitioner makes a showing that such a qualifying relationship exists or otherwise demonstrates eligibility, USCIS approves the petition. *Id.* An approved Form I-130 may form the basis for the beneficiary's immigrant visa application. *Id.* §§ 1201(a)(1)(A), 1202(a).

Then, if the beneficiary is located outside the United States, USCIS passes the approved petition to the U.S. Department of State's National Visa Center ("NVC") for processing. *See* 8 U.S.C. § 1202; U.S. Dep't of State, "Immigrant Visa Process."[1] The NVC collects required documents and fees from the beneficiary and schedules an immigrant visa interview before a U.S. consular officer at the relevant embassy or consulate. *See* 22 C.F.R. § 42.62.

At the interview, the beneficiary may make and execute an immigrant visa application before the consular officer. *See* 8 U.S.C. § 1201(a)(1); 8 U.S.C. §§ 1202(a), (e). The applicant must show, to the satisfaction of a consular officer, that he is eligible for an immigrant visa. *See* 8 U.S.C. §§ 1201(a)(1)(A), 1201(g), 1361. By statute, consular officers have exclusive authority to review applications for visas. *Id.* §§ 1104(a), 1201(a)(1). Once the visa application is executed,

---

[1] Available at: https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html (last visited January 30, 2026).

a consular officer must either issue or refuse the visa. *See* 22 C.F.R. § 42.81(a); 9 U.S. Department of State Foreign Affairs Manual ("FAM") § 504.1-3(g).[2] If the officer believes that the applicant is ineligible for a visa because he is inadmissible to the United States under 8 U.S.C. § 1182, because his application is deficient, or because of any other provision of law, the officer shall not issue the visa. *See* 8 U.S.C. §1201(g). Inadmissibility grounds under Section 1182 include, but are not limited to, the applicant's health, their criminal history, and their potential to present a security risk to the United States. *See* 8 U.S.C. § 1182.

A consular officer "cannot temporarily refuse, suspend, or hold the visa for future action." 9 FAM § 504.1-3(g); 9 FAM § 504.11-2(A)(a) ("[A]ny applicant to whom a visa is not issued by the end of the working day on which the application is made, or by the end of the next working day if it is normal procedure to issue visas to some or all applicants the following day, must be found ineligible. . ."). A consular officer may, however, place the application into "case-specific administrative processing." *See* U.S. Dep't of State, "Administrative Processing Information."[3] Administrative processing may result in the officer concluding that the applicant is qualified for a visa or, alternatively, that the applicant remains ineligible. *Id.* "The duration of the administrative processing will vary based on the individual circumstances of each case." *Id.* The "requirement to find an applicant ineligible when a visa is not issued applies even when" the consular officer decides to "make additional local inquiries or conduct a full investigation." See 9 FAM § 504.1-3(i)(1)(c); *see also id.* at (i)(1) ("There is no such thing as an informal refusal or a pending case once a formal application has been made."); 22 C.F.R. § 42.81(a)–(e).

---

[2] Available at: https://fam.state.gov/fam/09FAM/09FAM050401.html (last visited January 30, 2026).
[3] Available at: https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited January 30, 2026).

B. The Complaint

The following facts alleged in Plaintiffs' complaint are accepted as true for the purposes of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff Layla Balali is a U.S. citizen and her husband, Plaintiff Hesamaldin Balali, is a citizen of the Islamic Republic of Iran. ECF No. 1 at 3, ¶ 1. In August 2022, Mrs. Balali filed an I-130 visa petition on Mr. Balali's behalf. *Id.* On September 16, 2022, the I-130 petition was approved. *Id.* ¶ 2. On December 7, 2023, Mr. Balali attended an interview appointment at the U.S. embassy in Yerevan, Armenia. *Id.* ¶ 4. Mr. Balali made and executed an immigrant visa application,[4] and on December 7, 2023, his case was placed in "administrative processing." *See id.* at ¶ 5. To date, Mr. Balali's application remains in administrative processing and "remains neither approved nor denied." *See id.* ¶ 6. Plaintiffs state they have attempted to contact the U.S. Embassy in Yerevan and their representative in Congress regarding the delay, but no progress has been made. *See id.* ¶ 7. As a result, Plaintiffs allege that their "union has been interrupted." *Id.* at 1.

Plaintiffs bring two claims. First, they allege that the failure of the U.S. Embassy in Armenia to make a final determination on Mr. Balali's immigrant visa application is arbitrary, capricious, and not in accordance with federal law, and thus violates the APA, 5 U.S.C. § 706

---

[4] Plaintiffs do not specifically allege that Mr. Balali made and executed the visa application, but they do suggest as much. *See* ECF No. 1 at 3 ("At the interview, the noncitizen beneficiary makes and executes a visa application before a consular officer who reviews and adjudicates the visa application and determines the noncitizen beneficiary's eligibility"); *id.* at 3 ¶ 6 ("Mr. Hesamaldin Balali's visa application remains neither approved nor denied.") On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court may consider, in addition to the complaint, "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Courts may take judicial notice of federal regulations, *see Rafiy v. Nassau*, No. 15-CV-6497 (JFB/GRB), 2017 WL 33597, at *4 (E.D.N.Y. Jan. 4, 2017), which prescribe that "every [non-citizen] applying for an immigrant visa must make an application, as directed by the consular officer," on Form DS-230 (Application for Immigrant Visa and Alien Registration) or Form DS-260 (the electronic version of the application). *See* 22 C.F.R. § 42.63(a)(1). By virtue of Plaintiffs' claim that Mr. Balali's "visa application" remains in administrative processing, the Court assumes that Mr. Balali executed such an application.

4

(Count One).  ECF No. 1 at 4.  In their opposition to Defendants' motion to dismiss, Plaintiffs clarify that this is an unreasonable delay claim brought under § 706(1) of the APA.  *See* ECF No. 18 at 2.  Second, Plaintiffs seek declaratory and mandamus relief under the Mandamus Act, 28 U.S.C. § 1361, and Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*, requesting that the Court declare that Defendants' actions violated the APA and Plaintiffs' rights under the INA, the Code of Federal Regulations, and the U.S. Constitution, and further requesting that the Court issue a writ of mandamus compelling the U.S. Embassy in Armenia to adjudicate Mr. Balali's immigrant visa application within a reasonable time (Count Two).  *Id.* at 4–5.

### C. Defendants' Motion to Dismiss

Defendants have moved to dismiss this case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiffs' claims are barred by the doctrine of consular nonreviewability, or, in the alternative, because they are moot.  *See* ECF No. 17-1 at 8–14.  They also move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under the APA and the Mandamus Act.  *See id*. at 14–28.  Defendants offer a declaration and other additional factual allegations as part of their motion to dismiss.  *See id*. at 7; ECF No. 17-2 at 1–2.  The Court will consider the following information, which goes beyond or adds more detail to the allegations in the complaint, only for purposes of Defendants' challenge to subject matter jurisdiction.  *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (noting that a district court may consider evidence outside the pleadings when resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)).[5]

---

[5] The Court will not consider the declaration or any facts asserted in Defendants' motion to dismiss and its attachments for the purposes of deciding Defendants' Rule 12(b)(6) motion.  These assertions are secondhand accounts of government records, and thus constitute facts outside the pleadings; they do not fall within the categories of information the Court may consider without converting the motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Robinson v. Quiros*, No. 3:22-CV-1471 (MPS), 2024 WL 4241876, at *2 (D. Conn. Sept. 19, 2024).

On March 3, 2023, after the approval of Layla Balali's I-130 petition, Hesamaldin Balali's case became "documentarily qualified." Decl. of Julianna Bae, ECF No. 17-2 ¶ 6. Mr. Balali was scheduled for a consular interview at the U.S. Embassy in Yerevan on November 9, 2023; the interview was later rescheduled for December 7, 2023. *Id.* ¶ 7. On December 7, at his interview, Mr. Balali executed an immigrant visa application. *Id.* ¶ 8. That same day, the consular officer refused Mr. Balali's application and "determined that Mr. Balali failed to demonstrate his eligibility for the visa sought and that additional security screening was required." *Id.* The Embassy staff thereafter sent Mr. Balali a list of supplemental questions consistent with those found on Form DS-5535, Supplemental Questions for Visa Applicants, to which Mr. Balali provided answers on or before December 12, 2023. *Id.* ¶¶ 9–10. As of April 22, 2025, Mr. Balali's application "remain[ed] refused." *Id.* ¶ 11.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

A defendant may move to dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A court lacks subject matter jurisdiction when it "lacks the statutory or constitutional power to adjudicate" the case. *Morrison*, 547 F.3d at 170 (citation and internal quotation marks omitted). When a defendant also seeks dismissal on Rule 12(b)(6) grounds, the court should consider the Rule 12(b)(1) ground first. *Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 357 (S.D.N.Y. 2014); *see also Vandor, Inc. v. Militello*, 301 F.3d 37, 38–39 (2d Cir. 2002) (explaining that the court must "consider the ripeness question before reaching the merits of [the plaintiff's] claims because ripeness is jurisdictional . . . and absent jurisdiction federal courts do not have the power to dismiss *with prejudice*" (emphasis in original) (internal citations and quotation marks omitted)).

B.  Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiffs'] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). The Court is not "bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions,'" *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)), and "'a formulaic recitation of the elements of a cause of action will not do,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.   DISCUSSION

#### A.   Subject Matter Jurisdiction

##### *1.   Consular Nonreviewability*

First, the Court declines to dismiss the complaint for lack of subject matter jurisdiction on grounds of consular nonreviewability—though, as described further below, this is a basis for dismissal for failure to state a claim.

Under the doctrine of consular nonreviewability, a consular officer's action "to admit or exclude a [non-citizen] is final and conclusive." *Dep't of State v. Muñoz*, 602 U.S. 899, 907–08 (2024) (internal quotation marks omitted). The doctrine arises out of separation-of-powers principles: courts recognize that decisions about whether to admit non-citizens into the United States are often intertwined with complicated issues of foreign policy and best left to the political branches. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) ("[A]ny policy toward [non-citizens] is vitally and intricately interwoven [in] . . . the conduct of foreign relations"); *Trump v. Hawaii*, 585 U.S. 667, 702 (2018). The Second Circuit long ago held that "the judiciary will not interfere with the visa-issuing process." *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978); *see also Khan v. U.S. Dep't of State*, 23-CV-00093 (JCH), 722 F. Supp. 3d. 92, 97–98 (D. Conn. 2024).

Although the Second Circuit had previously viewed the doctrine of consular nonreviewability as a bar to the exercise of jurisdiction, *see Hsieh*, 569 F.2d at 1181, the United States Supreme Court recently stated that "the doctrine of consular nonreviewability is not jurisdictional." *Muñoz*, 602 U.S. at 908, n.4 (citing *Trump*, 585 U.S. at 682–83). Rather, as the Supreme Court put it, the doctrine stands for the principle that "the Judicial Branch has no role to play [in the admission of non-citizens to the United States] unless expressly authorized by law." *Id.* at 908. Because the Immigration and Nationality Act does not authorize judicial review of

consular officer's denial of a visa, "as a rule, the federal courts cannot review those decisions." *Id.* Accordingly, district courts in this Circuit have treated *Muñoz* as abrogating *Hsieh* to the extent *Hsieh* framed the principle as jurisdictional. *See, e.g.*, *Esghai v. U.S. Dep't of State*, No. 24-CIV-2993 (PAE), 2024 WL 4753799, at *3 (S.D.N.Y. Nov. 12, 2024) (under *Muñoz*, "consular nonreviewability does not require dismissal for lack of subject matter jurisdiction . . . Rather, '[d]ismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6).'") (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1027 (D.C. Cir. 2021); *Tharmabalan v. Blinken*, 732 F. Supp. 3d 269, 274–75 (S.D.N.Y. 2024) (consular nonreviewability rests on "justiciability concerns" addressed under Rule 12(b)(6), not jurisdictional ones); *Alhariri v. Blinken*, No. 22-CV-1036 (NGG) (TAM), 2025 WL 1434317, at *6 (E.D.N.Y. May 19, 2025); *Al-Harbi v. Rubio*, No. 5:24-CV-1336 (GTS/ML), 2025 WL 2442885, at *5 (N.D.N.Y. Aug. 25, 2025); *but see, e.g.*, *Adjei v. U.S. Dep't of State*, No. CV 3:24-CV-1311 (JCH), 2025 WL 2877820, at *3 (D. Conn. Oct. 9, 2025) (finding, even if the doctrine did not pose a jurisdictional bar, that underlying principles supported dismissal of claim related to consular processing).

Defendants contend that this case should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction on the grounds of consular nonreviewability—but, in so doing, do not contend with the implications of *Muñoz*. This Court considers itself bound by *Muñoz* and declines to dismiss this case for lack of subject matter jurisdiction on the ground of consular nonreviewability. As discussed below, however, Plaintiffs' claims are barred under the doctrine of consular nonreviewability, under a Rule 12(b)(6) analysis.

2. *Mootness*

The doctrine of mootness does, however, bar the exercise of jurisdiction here.

Where "events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it," dismissal for mootness is appropriate. *FBI v. Fikre*, 601 U.S. 234, 240 (2024). Plaintiffs seek a declaration that Defendants have violated the law, and a writ of mandamus that puts an end to the indefinite "administrative processing" of Mr. Balali's visa application. *See* ECF No. 18 at 2 (the application "has remained in indefinite administrative processing, with no resolution or timeline for adjudication"). To the Court's knowledge, Mr. Balali's application is still in administrative processing.

Defendants suggest that this case is moot because Plaintiffs already have the relief they seek—a "final decision" on Mr. Balali's visa application—and thus, this case was moot even before it was filed. *See* ECF No. 17-1 at 13 ("When a claim seeks to compel a federal official to act, and the federal official performs that act, the claim is moot."). Defendants are correct that the consular officer's decision to "refuse" Mr. Balali's application and place it into administrative processing was a "final decision." *See Rashed v. Blinken*, No. 24 CIV. 964 (PAE), 2024 WL 4904701, at *4 (S.D.N.Y. Nov. 27, 2024) ("[B]y law, a consular officer's decision after an application interview is a binary one—if a visa is not 'issue[d],' it is by-definition 'refuse[d].' *See* 22 C.F.R. § 42.81(a) (citing 8 U.S.C. § 1201(g)). A consular officer 'cannot temporarily refuse, suspend, or hold the visa for future action' at that point. 9 FAM § 504.1-3(g)."). Indeed, 22 C.F.R. § 42.81(a) provides only three options for the consular officer after an application has been made and executed: issue the visa, refuse the visa, or discontinue granting the visa pursuant to an order from the Secretary of State under 8 U.S.C. § 1253(g). And Plaintiffs do not contest Defendants' mootness argument in their three-page opposition brief. *See* ECF No. 18.

10

The Court recognizes that some district court decisions, including *Rashed*, determined that a visa application that has been refused subject to further administrative processing does not moot a claim for unreasonable delay. *See also Conley v. U.S. Dep't of State*, 731 F. Supp. 3d 104, 111 (D. Mass. 2024) (collecting cases). But here, as in *Conley*, it is "undisputed that the application has been denied," and the possibility that the application may be reconsidered in the future "alone does not support a viable claim for unreasonable delay" under the APA. *Id.* Given that the consular officer's decision after the interview is effectively binary—grant or deny—and Mr. Balali's application has been denied, Plaintiffs have obtained the relief they request: the application has been acted upon, and thus Plaintiffs' claims are moot. Although the Court understands the intuitive appeal of Plaintiffs' argument that his application remains in limbo, it is not in limbo under the law. Thus, the Court finds that Plaintiffs' complaint is moot.

B. <u>Failure to State a Claim</u>

Recognizing that district courts have reached different conclusions about the mootness of APA unreasonable delay claims when a visa application is placed in administrative processing, however, the Court proceeds to consider Defendants' Rule 12(b)(6) arguments. The Court holds that Plaintiffs' complaint fails to state a claim for relief.

1. *Consular Nonreviewability*

The doctrine of consular nonreviewability does not deprive this Court of jurisdiction to hear Plaintiffs' claim, but as articulated in the Second Circuit, its prohibition on "interference" with the consular processing of visa applications counsels against granting Plaintiffs the relief they seek. *See, e.g.*, *Tharmabalan*, 732 F. Supp. 3d at 274–77 (concluding that the applicability of consular nonrevewability to Plaintiffs' delayed-adjudication claim did not implicate subject matter jurisdiction but warranted dismissal on the merits). The majority of district courts in the Second Circuit have held that the doctrine of consular nonreviewability applies equally to claims of

11

consular action and consular inaction. *See Hsieh,* 569 F.2d at 1181 ("The district court correctly held that no jurisdictional basis [exists] for review of the action of the American Consul in Taiwan *suspending* or denying the issuance of immigration visas to appellant's children there.") (emphasis added); *Algazali v. Blinken,* No. 23-CIV-6038 (LGS), 2025 WL 357721, at *4 (S.D.N.Y. Jan. 31, 2025); *Khan*, 722 F. Supp. 3d. at 98.  In *Gharedaghi v. Blinken*, No. 3:24-CV-1798 (VAB), 2025 WL 2300763, at *3–4 (D. Conn. Aug. 8, 2025), Judge Bolden helpfully catalogued cases decided both before and after *Muñoz* holding that the consular nonreviewability doctrine bars claims of unreasonable delay in processing immigrant visa applications.

The Court recognizes that a minority of courts in this Circuit, and courts in other Circuits, draw a distinction between claims challenging consular action and those challenging consular *in*action, and hold that consular nonreviewability is not applicable to the latter. *See, e.g.*, *Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1997) (finding consulate lacked authority to suspend a visa application); *Augustin v. Blinken*, No. 23-CV-76 (JEB), 2023 WL 4547993, at *3 (D.D.C. July 14, 2023) (collecting cases);  *Sharifi v. Blinken*, 731 F. Supp. 3d 433, 438 (E.D.N.Y. 2024) (finding consular nonreviewability inapplicable where, though "nominally 'refused,'" the application was "in a state of administrative limbo that cannot fairly be described as a final determination"); *Ahmed v. Bitter*, No. 23-CIV-189, 2024 WL 22763, at *5 (E.D.N.Y. Jan. 2, 2024) (collecting cases);  *Waris v. Bitter*, No. 23 Civ. 9487, 2024 WL 3237914, at *4 (S.D.N.Y. June 28, 2024) (holding that the doctrine and its jurisdictional bar do "not apply to actions seeking to compel visa adjudications," but dismissing the complaint for failure to state a claim because of insufficient delay).  But the weight of authority in the Second Circuit supports treating both types of claims consistently, and this Court finds that "administrative processing" is sufficiently analogous to the "suspension" of immigration visas in *Hsieh* such that issuing an order compelling

further adjudication and the removal of Mr. Balali's application from administrative processing would constitute improper interference with the visa-issuance process. *See Khan*, 722 F. Supp. 3d at 98.[6] Thus, the doctrine of consular nonreviewability bars Plaintiffs' claims.

### 2. APA Section 706(1)

Additionally, Plaintiffs have failed to state a claim under the APA.

The APA provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Courts may "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), but agency action may only be compelled where the "plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004) (emphasis in original); *Benzman v. Whitman*, 523 F.3d 119, 130 (2d Cir. 2008) ("[Section] 706(1) empowers a court only to compel an agency to perform a ministerial or non-discretionary act") (internal quotation marks omitted).

The APA's mandate that agencies "conclude" matters in a "reasonable time" does not provide a standalone basis for judicially-compelled adjudication under Section 706(1), and the parties have not pointed the Court to any other regulation or provision of law establishing such independent basis. *See Norton*, 542 U.S. at 63 n. 1 ("[A] delay cannot be unreasonable with respect to action that is not required"). Courts that have considered *Norton*'s requirement in the context

---

[6] Plaintiffs' only citation in support of their argument on this point is an out-of-circuit district court case, *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 937 (D. Minn. 2011), that addresses an asylee's application for adjustment to legal permanent resident status. As a different statutory framework applies to such applications and the *Al-Rifahe* court's decision does not address the doctrine of consular nonreviewability for immigrant visa applications, it is irrelevant to the issues in this case. Moreover, although Plaintiffs do not explicitly invoke the exception to the applicability of the consular nonreviewability doctrine that applies when "the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen," *see Muñoz*, 602 U.S. at 908, that exception is inapplicable here nonetheless. Plaintiffs' complaint requests that this Court declare that Defendants' actions violated the U.S. Constitution, but Plaintiffs do not assert which, if any, of Mrs. Balali's constitutional rights have been allegedly violated. And in any event, although Mrs. Balali is a U.S. citizen, "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country." *Id.* at 909. Thus, the exception does not apply here.

of delays related to administrative processing have found that the State Department is under no obligation to complete such processing. *See, e.g.*, *Adjei*, 2025 WL 2877820, at *4 (citing *Norton*, 544 U.S. at 64)); *Rashed,* 2024 WL 4904701, at *4; *Karimova v. Abate,* No. 23-5178, 2024 WL 3517852, at *4 (D.C. Cir. July 24, 2024) (*per curiam*). Rather, a consular officer is required by regulation to "issue" or "refuse" the visa after the consular interview. *See Rashed,* 2024 WL 4904701, at *4 (citing 22 C.F.R. § 42.81(a); 8 U.S.C. § 1201(g)). "Although the State Department might in its discretion revisit a consular officer's refusal in light of new information, it is nowhere 'required' to do so." *Esghai,* 2024 WL 4753799, at *5. Indeed, the entire notion of "administrative processing" appears discretionary. *See* U.S. Dep't of State, "Administrative Processing Information" ("Upon completion of . . . administrative processing, the consular officer might conclude that an applicant is now qualified for the visa . . . [a]lternatively, the officer may conclude that the applicant remains ineligible").[7]

To an applicant, a common-sense implication of the term "administrative processing" is that a process is occurring that will one day come to a close and result in an additional decision. *See id.* (referring to "completion" of the process). The prospect of a visa application languishing in indefinite "processing," even while technically "refused," is understandably frustrating. But Plaintiffs have not identified a "precise, definite act" that the Department of State or the Embassy *must* take beyond adjudicating Mr. Balali's application. *See Norton*, 542 U.S. at 63–64. Nor do Plaintiffs point to any authority specifically commanding—or even suggesting—that the agency has *any* duties relating to applications placed in administrative processing, including that the process will necessarily involve reconsideration of a visa application or that it will conclude within a certain time frame. In fact, other courts have affirmatively held that such authority does not

---

[7] Available at: https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited January 30, 2026).

exist. "[N]either a federal statute nor regulation clearly requires" the further adjudication of Mr. Balali's application. *See Karimova*, 2024 WL 3517852, at *4. The Court cannot conclude that State Department is required to take any "precise" or "definite" non-discretionary act. *See Norton*, 542 U.S. at 63–64. Accordingly, there is no required "agency action" capable of forming the basis for a claim of unreasonable delay under § 706(1).

And even if there existed an actionable delay in agency action in this case, Plaintiffs' claim that that the delay is unreasonable would not succeed. In assessing whether the agency has unreasonably delayed an action, courts in the Second Circuit apply the six factors set forth by the D.C. Circuit in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Families for Freedom v. Napolitano*, 628 F. Supp. 2d 535, 540 (S.D.N.Y. 2009) (citing the *TRAC* factors, cleaned up); *see also Nat'l Resources Def. Council, Inc. v. U.S. Food and Drug Admin.*, 710 F.3d 71, 84 (2d Cir. 2013) (noting that *TRAC* sets forth the test for determining if agency action is unreasonably delayed). Plaintiffs bear the burden of plausibly alleging unreasonable delay. *Ahmed*, 2024 WL 22763, at *8. Applying the TRAC factors to Plaintiffs' allegations, the Court concludes that any delay in the further processing of Mr. Balali's application is not unreasonable. In assessing these factors, the Court notes that Plaintiffs have not presented

15

any argument regarding the *TRAC* factors (nor mentioned *TRAC* whatsoever). Thus, the Court assesses the factors by predicting what Plaintiffs may have argued.

TRAC factors one and four weigh in favor of Defendants. The first factor—whether there is a "rule of reason" governing the agency's delay—is often considered the "most important" factor. *See N-N v. Mayorkas*, 540 F. Supp. 3d 240, 261–62 (E.D.N.Y. 2021) (citing cases); *see also Cohen v. Jaddou*, No. 21-CV-5025, 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023) (noting that the "first and fourth [TRAC] factors are the most important"). Defendants posit that "the need for administrative processing to conduct additional security screening" is an acceptable rationale for the approximately two-year delay in this case. ECF No. 17-1 at 22. Whether a rationale for delay is suffices as a "rule of reason" depends on many factors, including "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). The Court finds Defendants' explanation satisfactory in light of the complexity of the adjudication of visa applications, and the fact that Plaintiffs have offered no objection to this "rule of reason." Further, delays as long as five years in the adjudication of immigration benefits have been held not unreasonable as a matter of law. *See, e.g.*, *Al Saidi v. U.S. Embassy in Djibouti*, 544 F. Supp. 3d 289, 296 (E.D.N.Y. 2021); *Kaur v. Mayorkas*, No. 22 Civ. 4514 (PAE), 2023 WL 4899083, at *7 (S.D.N.Y. Aug. 1, 2023) (collecting cases); *Espin v. Gantner*, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005). Plaintiffs' assertion that the application has been in administrative processing for "more than four months" does not mean that the delay is unreasonable. *See* ECF No. 18 at 2. Nor would the apparently-accurate assertion that as of the date of this ruling, Plaintiffs' application has now been in administrative processing for more than two years. Accordingly, factor one favors Defendants.

The fourth factor, which asks the Court to consider the impact of compelled action on agency's priorities writ large, *see Families for Freedom*, 628 F. Supp. 2d at 540, also favors Defendants.  Plaintiffs have not alleged any facts suggesting that redirecting consular resources to Mr. Balali's application would create a net benefit for the agency's efforts to process visa applications, nor have they alleged that Mr. Balali's case presents special facts warranting priority consideration over other applicants, who would necessarily be pushed further back in line if the reliefs Plaintiffs seek is granted.  *See Pesantez* v. *Johnson*, No. 15-CV-1155 (BMC), 2015 WL 5475655, at *3 (E.D.N.Y. Sept. 17, 2015) ("[T]he facts of this case do not counsel in favor of a remedy that would, if it did anything, move plaintiff's application to the front of the line at the expense of other applicants whom she has not alleged are less deserving of prompt adjudication"); *Xu* v. *Nielsen*, No. 18-CV-2048 (BMC), 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) ("There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit."). The effect of granting Plaintiffs' requested relief "would only harm other applicants, who are equally deserving of prompt adjudication." *See Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020).

As to factor two, the parties have not pointed the Court to any "timetable" by which the State Department must further adjudicate a visa application that has been placed in "administrative processing." *Families for Freedom*, 628 F. Supp. 2d at 540–41.  Thus, this factor is, at best, neutral.  *See id.*

Factors three and five favor Plaintiffs, though not decisively so.  As to factor three, human health and welfare are plausibly at stake in this determination.  While Plaintiffs do not assert any injury beyond that "their union has been interrupted," ECF No. 1 at 1, the Court recognizes that

the indefinite "administrative processing" of Mr. Balali's application—if Mr. Balali is indeed eligible for a visa—harms both Mr. Balali and his wife. The fact that "'financial, medical, and emotional hardship' is common while awaiting adjudication of visa applications," *see* ECF No. 17-1 at 24 (citing *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021)), does not mean that such hardship is insignificant. Lastly, factor five—the nature of the interests prejudiced by the delay—overlaps with factor three. But while these two factors tip in Plaintiffs' favor, they are of limited weight: the Court must also consider the potential that other applicants in similarly (or more) difficult circumstances whose might suffer further delay if resources are diverted to conclude Mr. Balali's application more quickly. *See Khan*, 722 F. Supp. 3d at 99. As discussed with respect to factor four, Plaintiffs have not alleged any extenuating circumstances creating heightened concern for Mr. Balali's health and welfare over that of other visa applicants. Thus, these factors should be attributed limited weight.

Lastly, factor six is neutral because Plaintiffs' complaint does not allege bad faith or impropriety on the part of Defendants. *See id.* at 99–100.

On the whole, the *TRAC* factors favor Defendants, for the reasons the Court has explained. Accordingly, Plaintiffs have failed to state a claim for unreasonable delay of agency action under the APA. Count One is therefore dismissed.

       3. *Mandamus Act*

Finally, Plaintiffs fail to plausibly state a claim under the Mandamus Act.

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Plaintiffs must demonstrate three elements to establish eligibility for a writ of mandamus under the Act: "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty

on the part of the defendant to do the act in question; and (3) there is no other adequate remedy available." *Benzman*, 523 F.3d at 132–133. Mandamus relief is only warranted if the plaintiff identifies a "clear nondiscretionary duty" on the part of the agency. *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989); *see also Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 543 (S.D.N.Y. 2008) (quoting *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988)) ("The court's power depends on the nature of the duty sought to be compelled: relief 'will issue only to compel the performance of a clear nondiscretionary duty.'") (internal quotation marks omitted).

Plaintiffs cannot meet this burden. As discussed above with respect to Plaintiffs' APA claim, Plaintiffs have not alleged a "clear nondiscretionary duty" on the part of the State Department. Further, Plaintiffs cannot establish that there is "no other adequate remedy available," *see Anderson*, 881 F.2d at 5, despite their allegations that they have exhausted other administrative remedies, ECF No. 1 at 4, ¶ 8. The existence of an APA claim provides another adequate remedy— even if Plaintiffs' claim here fails on the merits. *See, e.g.*, *Gharedaghi*, 2025 WL 2300763, at *5 (D. Conn. Aug. 8, 2025) (citing *Waris*, 2024 WL 3237914, at *5). The claims presented here cannot support a writ of mandamus under the Mandamus Act, and Count Two must be dismissed.

    4. *Leave to Amend*

Plaintiffs have requested leave to amend in their opposition brief, without specifying in what ways they might amend their complaint. *See* ECF No. 18 at 3. Although it is true that Federal Rule of Civil Procedure 15 provides that leave to amend should be freely given "when justice so requires," leave may be denied when, among other reasons, amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Tocker v. Phillip Moris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) ("[A] motion for leave to amend a complaint may be denied when amendment would be futile.").

Here, leave to amend would be futile, given that the doctrine of consular nonreviewability bars Plaintiffs' claims; there is no clear nondiscretionary duty on the part of Defendants that would support claims under the APA or the Mandamus Act; and there is no unreasonable delay under the APA.  *See Gharedaghi*, 2025 WL at *6.  Accordingly, although Plaintiffs have requested leave to amend, their request is denied.

## IV.  CONCLUSION

For these reasons, Defendants' motion to dismiss, ECF No. 17, is GRANTED, without leave to amend.  Plaintiffs' motion to expedite a ruling on Defendants' motion to dismiss, ECF No. 24, is denied as moot.

The Clerk is directed to enter judgment for Defendants and close this case.


**SO ORDERED** at Hartford, Connecticut, this 30th day of January, 2026.


 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE